# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2025

## STATE OF TENNESSEE v. JUAN MANUEL MEJIA NUNEZ

**Appeal from the Circuit Court for Lincoln County**
No. 22-CR-113    Forest A. Durard, Jr., Judge

_____

**No. M2024-00179-CCA-R3-CD**

_____

A Lincoln County jury convicted the Defendant, Juan Manuel Mejia Nunez, of three counts of aggravated sexual battery and two counts of sexual battery by an authority figure. Following a sentencing hearing, the trial court imposed an effective sentence of eighteen years' incarceration. On appeal, the Defendant contends that the trial court erred by (1) permitting several of the State's witnesses to remain in the courtroom throughout the trial; (2) admitting testimony that referenced and described the victims' forensic interviews; (3) admitting testimony from a police investigator about the behavioral characteristics of child sexual abuse victims; and (4) limiting testimony from the victims' mother regarding the circumstances of her divorce. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Patrick G. Frogge, Executive Director, District Public Defenders Conference (on appeal); and James B. McVeigh, David Kittrell, and Taylor Witt, Nashville, Tennessee (at trial), for the appellant, Juan Manuel Mejia Nunez.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Amber L. Sandoval and Jeffery D. Ridner, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    THE DEFENDANT'S ABUSE OF THE VICTIMS

At the time of the events in this case, the two minor victims—referred to in this opinion as the Older Brother (O.B.) and the Younger Brother (Y.B.)—lived with their parents and several siblings.  Their mother operated a decorating business out of the family's home.  Sometime in 2013 or 2014, the Defendant, who was the victims' maternal uncle, moved into the household and began living with them.

The victims each described multiple instances of inappropriate sexual contact and touching perpetrated by the Defendant over a period of years.  These incidents occurred both in the family home and at the Defendant's later residence.  Although O.B. disclosed the conduct to his mother, the Defendant's behavior continued.

The final incident occurred on December 13, 2019, when the Defendant arrived at the family home to pick up supplies.  At the time, Y.B. was asleep in his parents' bedroom.  Y.B. testified that the Defendant entered the room and made additional sexual contact with him.  Y.B. attempted to call his father and sent O.B. several text messages asking for help.

Upon receiving the messages, O.B. found Y.B. visibly upset, and the two discussed what had occurred.  When their father returned home, both victims disclosed the Defendant's conduct.  Their mother, who arrived shortly thereafter, confirmed that O.B. had previously disclosed the abuse to her.

Several weeks later, Y.B. reported the conduct to a teacher.  School personnel contacted law enforcement, prompting an investigation by the Lincoln County Sheriff's Department.  Investigator Tammy McDonald arranged forensic interviews and corroborated the text messages from the final incident on December 13.  She also verified the Defendant's residence in Lincoln County and the earlier disclosure to the victims' mother.

## B. TRIAL, SENTENCE, AND APPEAL

In 2022, a Lincoln County grand jury indicted the Defendant. A subsequent superseding indictment charged him with five offenses: one count of sexual battery by an authority figure against Y.B., three counts of aggravated sexual battery against Y.B., and one count of sexual battery by an authority figure against O.B.

The case proceeded to a jury trial on the superseding indictment in January 2023. The State presented testimony from O.B., Y.B., their father, and Investigator McDonald, among others. The witnesses generally testified to the facts summarized above, though cross-examination highlighted certain inconsistencies between their trial and preliminary hearing testimony.

The defense called only one witness, the victims' mother, who acknowledged that O.B. had told her about the abuse before the December 13, 2019, incident. She also testified that both victims showed behavioral issues requiring therapy and that they continued using marijuana despite her objections. The mother briefly discussed the circumstances of her divorce from the victims' father, including whether she ever tried to dismiss the divorce case.

The jury found the Defendant guilty as charged on all counts. In March 2023, the trial court imposed an effective sentence of eighteen years' incarceration. The Defendant filed a timely motion for a new trial, followed by an amended motion, both of which were denied on January 9, 2024. He filed a timely notice of appeal twenty-seven days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

The Defendant claims that the trial court erred by (1) permitting several of the State's witnesses to remain in the courtroom throughout the trial; (2) admitting testimony that referenced and described the victims' forensic interviews; (3) admitting testimony from a police investigator about the behavioral characteristics of child sexual abuse victims; and (4) limiting testimony from the victims' mother regarding the circumstances of her divorce.

We address each of these issues in turn.

3

## A. WITNESS SEQUESTRATION

The Defendant first argues that the trial court erred by excluding four State witnesses—Investigator McDonald, the two victims, and the victims' father—from sequestration in violation of Tennessee Rule of Evidence 615. He concedes that no objection was made during the trial to the presence of these individuals in the courtroom, but he asserts that their continued presence constitutes plain error. The State responds that the trial court's ruling did not violate a clear and unequivocal rule of law and that plain error relief is therefore unwarranted. We agree with the State.

### 1. Background

We begin our analysis by reviewing the trial court's rulings and the procedural posture relevant to the Defendant's claim. After the jury was sworn, the State asked to sequester all witnesses pursuant to Tennessee Rule of Evidence 615, and the trial court directed all witnesses to leave the courtroom. However, the court permitted Investigator McDonald to remain as the State's designated representative. It also allowed the victims to stay, citing their constitutional right to be present, and permitted the victims' father to remain because one of the victims was still a minor. The Defendant did not object to the presence of any of these witnesses, either at the time of the court's ruling or when they later testified.

### 2. Tennessee Rule of Evidence 615

Often known simply as "the Rule," Tennessee Rule of Evidence 615 provides for the sequestration of witnesses during trial. In relevant part, the Rule provides as follows:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial . . . . This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Tenn. R. Evid. 615. The Rule "codifies the long-established practice of sequestering witnesses during a trial so that they may not hear one another testify prior to testifying themselves." *See State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010). The purpose of Rule 615 is "to preserve the credibility of their testimony in its pre-trial condition." *See id.*

4

When invoked, Rule 615 will exclude most witnesses from the courtroom during trial. However, its plain language contains three exceptions to this rule of exclusion, including "a person designated by counsel for a party that is not a natural person." *See* Tenn. R. Evid. 615. As the Advisory Commission Comments to Rule 615 recognize, "the prosecuting attorney could designate a crime victim, a relative of the crime victim, or an investigation officer" as individuals eligible for exemption from sequestration. In rare cases, the Rule may also give way to constitutional concerns as well. *See State v. Sams*, 802 S.W.2d 635, 637 (Tenn. Crim. App. 1990) (recognizing that Rule 615 could not be used to exclude witnesses in violation of Article I, § 9 of the Tennessee Constitution).

### 3.     Waiver of Plenary Review

Before addressing the merits, we must determine whether the Defendant has preserved this issue for plenary review on appeal. Ordinarily, before a party may raise an issue on appeal, the party must preserve that issue in the trial court. *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *3 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*.

To preserve an issue, the party should first assert a timely objection identifying a specific ground. The party then must later raise that issue in a motion for a new trial. *See* Tenn. R. Evid. 103(a)(1); Tenn. R. Crim. P. 51(b); Tenn. R. App. P. 3(e). Otherwise, the party waives the issue on appeal and cannot seek plenary review. *See State v. Ruiz*, __ S.W.3d __, No. E2023-01017-CCA-R3-CD, 2024 WL 5103509, at *7 (Tenn. Crim. App. Dec. 13, 2024), *perm. app. denied* (Tenn. May 23, 2025).

The Tennessee Supreme Court has emphasized that this rule applies not only to evidentiary objections but also to challenges involving *procedural* decisions made during trial. *See State v. Walls*, 537 S.W.3d 892, 899 (Tenn. 2017). Thus, a challenge to a procedural decision by the trial court requires "a contemporaneous objection by counsel so that the trial court [has] an opportunity to address and/or correct the issue immediately." *Id.* at 900.

In this case, the Defendant did not object to the trial court's decision permitting certain witnesses to remain in the courtroom. He did not object at the time of the court's actions or when the witnesses were individually called to testify. Because he raised no contemporaneous objection during the trial, he has waived plenary review of this issue on appeal. *See State v. Anthony*, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992) (finding waiver of Rule 615 challenge when the defendant failed to object at trial).

### 4.        Plain Error Review

Recognizing that he has waived plenary review of this issue, the Defendant requests review for plain error.  Our supreme court has recognized that "[u]nlike plenary review, which applies to all claims of error that are properly preserved, plain error review is limited to those errors which satisfy five criteria." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020).  These criteria are as follows:

(a)    the record must clearly establish what occurred in the trial court;

(b)    a clear and unequivocal rule of law must have been breached;

(c)    a substantial right of the accused must have been adversely affected;

(d)    the accused did not waive the issue for tactical reasons; and

(e)    consideration of the error is "necessary to do substantial justice."

*See, e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019).  Whether plain error exists "must depend upon the facts and circumstances of the particular case." *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).  Even then, however, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).  Only "rarely will plain error review extend to an evidentiary issue." *State v. Haymer*, 671 S.W.3d 568, 578 (Tenn. Crim. App. 2023) (citation omitted).

Importantly, the "defendant bears the burden of establishing all of these elements." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022).  As such, an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021).  "Whether the plain error doctrine has been satisfied is a question of law which we review de novo." *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015).

In this case, the Defendant focuses primarily on the second plain-error factor. Although he cites no legal authority beyond Rule 615 itself, he argues that the trial court violated a clear and unequivocal rule of law by exempting four of the State's witnesses from sequestration.  He asserts that the court failed to offer a valid reason for the exemption and did not consider the underlying purpose of Rule 615.  We respectfully disagree.

6

With respect to the investigator remaining in the courtroom during the testimony of other witnesses, the plain language of Rule 615 allows for the State to designate "a person" to be exempt from sequestration. The trial court recognized that Investigator McDonald was the State's designated representative. As such, no breach of a clear and unequivocal rule of law occurred with permitting the investigator to remain in the courtroom during the trial. *See Jordan*, 325 S.W.3d at 40 ("[I]f the State is a party, the prosecuting attorney may designate a crime victim, a crime victim's relative, or an investigating officer as immune from sequestration.").

With respect to the victims and their father, the trial court concluded that each had a constitutional right to be present during the proceedings.[1] Article I, section 35 of the Tennessee Constitution guarantees victims of crime "[t]he right to be present at all proceedings where the defendant has the right to be present." Under Tennessee Code Annotated section 40-38-302(4)(A)(i)-(ii), the term "victim" includes both "[a] natural person against whom a crime was committed" and "the parent or legal guardian" of a minor victim.

Tennessee courts have acknowledged that a victim's constitutional right to be present may affect how Rule 615 applies. *See State v. Elkins*, 83 S.W.3d 706, 713 (Tenn. 2002); *State v. Parrish*, No. E2019-00664-CCA-R3-CD, 2020 WL 2510530, at *15 (Tenn. Crim. App. May 15, 2020), *perm. app. denied* (Tenn. Oct. 8, 2020). One respected treatise has even suggested that the Constitution may entitle the State to two designees under Rule 615, permitting both the victim and another person, such as the lead investigator, to remain in the courtroom. *See* Neil P. Cohen et al., *Tennessee Law of Evidence* § 6.15[5][b] (7th ed. 2024) (hereinafter *Tennessee Law of Evidence*). However, the precise interaction between Rule 615 and Article I, section 35 remains unresolved. *See, e.g.*, *Davis v. State*, No. W2017-01592-CCA-R3-PC, 2018 WL 3599959, at *7 (Tenn. Crim. App. July 26, 2018), *no perm. app. filed*.

Because this claim is subject to plain error review, we need not resolve the extent to which constitutional considerations modify the operation of Rule 615. Courts are not required to decide unsettled legal questions to reject a claim of plain error. *See State v. Dotson*, 450 S.W.3d 1, 72 (Tenn. 2014). Here, because the relevant law is unsettled, the Defendant has not established a breach of a clear and unequivocal rule of law. *See id.*; *see also State v. Fusco*, 404 S.W.3d 504, 535 (Tenn. Crim. App. 2012) (declining plain error

---

[1] The trial court also concluded that the father had a right to remain in the courtroom because one of his sons was still a minor. *See* Tenn. Code Ann. § 40-38-119(b)(2).

relief where "the jurisprudence on the topic is anything but clear"). Accordingly, the Defendant is not entitled to relief on this ground.

## B.     TESTIMONY REGARDING FORENSIC INTERVIEWS

The Defendant next argues that the trial court erred by allowing State witnesses to refer to the victims' forensic interviews without complying with the procedural and substantive requirements of Tennessee Code Annotated section 24-7-123. Although the interviews themselves were never introduced into evidence, the Defendant asserts that their contents were effectively conveyed to the jury through witness testimony. In his view, this circumvented the statutory safeguards and resulted in the admission of inadmissible hearsay that improperly bolstered the victims' credibility.

The State responds that the Defendant failed to object contemporaneously at trial and has therefore waived plenary review of this issue. Moreover, the State asserts that the Defendant has failed to make the showings necessary for plain error relief. We agree with the State.

### 1.     Background

As additional background for the Defendant's second issue, we note that both victims in this case participated in forensic interviews conducted during the State's investigation. Although the interviews were not admitted as trial exhibits, multiple witnesses, including the victims and Investigator Tammy McDonald, referenced them in their testimony. For example, before questioning the victims about specific acts of abuse, the State asked each child generally whether they had disclosed the abuse during their respective forensic interviews. Investigator McDonald also testified that she arranged the interviews and reviewed their contents as part of her investigation.

The Defendant did not object to any of these references at trial. He also failed to include any objection in his motion for a new trial. As such, consistent with our analysis of the previous issue, we conclude that the Defendant has waived plenary review of these issues as well. *See, e.g.*, *State v. Stegall*, No. W2022-00628-CCA-R3-CD, 2023 WL 6319610, at *6 (Tenn. Crim. App. July 14, 2023) (finding waiver of plenary review based on the failure to object to the admission of a forensic interview), *no perm. app. filed*.

## 2.        Plain Error Review

Because plenary review has been waived, the Defendant seeks relief under the plain error doctrine.  He challenges four categories of testimony related to the forensic interviews: (1) references to the existence of the victims' forensic interviews; (2) the victims' generalized statements that they disclosed abuse during those interviews; (3) the investigator's testimony describing her conversation with Y.B. about the final incident and the related text messages; and (4) the investigator's testimony that she corroborated details the victims had provided in their interviews.  We address each category in turn.

### a.        Witness References to the Forensic Interviews

First, the Defendant challenges testimony referring to the existence of the victims' forensic interviews, including comments made by the State during opening and closing statements and by several trial witnesses, such as the victims, their father, and Investigator McDonald.  The Defendant cites no authority suggesting that merely acknowledging a forensic interview is inadmissible.  On the contrary, Tennessee courts have held that a reference to the existence of a forensic interview does not implicate the hearsay rule.  *See Ricco v. State*, No. W2010-02626-CCA-R3-PC, 2011 WL 5996061, at *9 (Tenn. Crim. App. Nov. 29, 2011), *perm. app. denied* (Tenn. Apr. 12, 2012).  Moreover, these references did not convey to the jury any of the interview content that would have triggered the requirements of Tennessee Code Annotated section 24-7-123, which governs the admissibility of forensic interviews as substantive evidence at trial.  The Defendant has therefore not established a breach of a clear and unequivocal rule of law, and he is not entitled to plain error relief on this ground.

### b.        Generalized References to Abuse

Next, the Defendant challenges the testimony from each victim that they disclosed abuse to the forensic interviewer.  In their respective testimonies, both victims confirmed that they participated in a forensic interview and, in general terms, acknowledged disclosing the abuse during those interviews.  The testimony then shifted to the victims' direct, detailed accounts of the abuse itself, without further reference to the interviews.

Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Our supreme court has explained that three elements must be present for a statement to qualify as hearsay: (1) it must be made out of court; (2) it must

9

constitute an assertion; and (3) it must be offered to prove the truth of the matter asserted. *See State v. McCoy*, 459 S.W.3d 1, 11 (Tenn. 2014). A critical consideration is the purpose for which the statement is introduced. *See State v. Padgett*, No. E2018-00447-CCA-R3-CD, 2019 WL 2233890, at *7 (Tenn. Crim. App. May 23, 2019) ("[A]s a part of our hearsay analysis, we must discern the purpose for which the statement is being offered."), *no perm. app. filed*. If the statement is not offered for the truth of the matter asserted, it does not constitute hearsay in that context, even if it might in another. *See, e.g.*, *State v. Allman*, 712 S.W.3d 467, 545 (Tenn. Crim. App. 2024).

Because there was no contemporaneous objection, the State was not required to clarify the purpose for which it elicited these references. When viewed in context, the general questions about whether the victims disclosed abuse during their forensic interviews appear to have served primarily as a narrative transition to their in-court testimony, rather than as an effort to establish the truth of any prior statements. When offered for that limited purpose and not for their truth, such references do not constitute hearsay, even if they might in a different context. Accordingly, the Defendant has not demonstrated that the testimony constituted inadmissible hearsay or that its admission breached a clear and unequivocal rule of law.

Furthermore, we are not persuaded that these generalized references amounted to the introduction of substantive evidence subject to the procedural requirements of Tennessee Code Annotated section 24-7-123. In both instances, the victims provided detailed, first-hand testimony about the abuse they experienced, independent of anything they may have said in the interviews. Given that the references were brief, non-specific, and followed by admissible testimony, we cannot conclude that their admission probably affected the outcome of the trial, as required to satisfy the fifth factor necessary for plain error relief. *See Knowles*, 470 S.W.3d 425; *Vance*, 596 S.W.3d at 256 ("[A] conclusion that substantial justice requires relief would imply a significant probability that the jury would have acquitted the Defendant had the disputed testimony not been admitted."). The Defendant is not entitled to plain error relief on this ground.

### c. Investigator McDonald's Conversation with Y.B.

Third, the Defendant challenges testimony from Investigator McDonald that Y.B. shared text messages with her and identified December 13 as the date of the final incident. In this portion of her testimony cited by the Defendant, the investigator approached Y.B. and asked him about text messages that he sent to O.B. during the last sexual assault. She also testified that she asked him whether he still had the messages, and Y.B. showed her the messages on his phone. Y.B. then told her that the incident occurred on December 13.

10

Before evidence may be excluded on the basis of hearsay, a "statement" must be present, meaning that there must be "an oral or written assertion" or "nonverbal conduct of a person if it is intended by the person as an assertion." *See* Tenn. R. Evid. 801(c). Typically, "[a] witness's first-hand observations and experiences are not hearsay because they do not involve a witness's relation of a statement." *State v. Bell*, No. M2008-01187-CCA-R3-CD, 2009 WL 3925370, at *11 (Tenn. Crim. App. Nov. 19, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010); *Goff v. State*, No. W2021-00929-CCA-R3-PC, 2022 WL 1769180, at *5 (Tenn. Crim. App. June 1, 2022) ("Despite the petitioner's assertions, the victim's first-hand account of what he saw does not constitute hearsay."), *perm. app. denied* (Tenn. Sept. 29, 2022). Here, the investigator merely described her own observations and actions. She did not recount any out-of-court statements by Y.B. made during his forensic interview, nor did she introduce the content of the text messages themselves. Accordingly, because this portion of the investigator's testimony would not have been subject to a valid hearsay objection, the Defendant has not demonstrated a breach of a clear and unequivocal rule of law.

The Defendant also challenges the portion of Investigator McDonald's testimony in which she recounted that Y.B. identified December 13 as the date of an abusive incident. Even assuming that this statement was offered for the truth of the matter asserted and that it should have been excluded, we cannot conclude that its admission affected the outcome of the trial. Y.B. had already testified directly to the date of the incident during his own testimony, and the investigator's statement merely repeated that fact. Because the challenged testimony was cumulative of admissible evidence and not independently prejudicial, the Defendant has failed to establish that its admission probably changed the verdict, as required to satisfy the fifth factor necessary for plain error relief. *See Knowles*, 470 S.W.3d at 425; *Vance*, 596 S.W.3d at 256. The Defendant is not entitled to relief on this ground.

### d.      Investigator McDonald's Investigation

Finally, the Defendant challenges Investigator McDonald's testimony that she corroborated several statements made by the victims during their forensic interviews. Specifically, the investigator testified that she verified the locations where the abuse occurred, confirmed text messages exchanged between the victims, verified that Y.B. stayed with his aunt and uncle, and confirmed that O.B. had previously disclosed the abuse to their mother. The Defendant contends that this testimony effectively bypassed the procedural safeguards required for admitting the content of a forensic interview as substantive evidence. We respectfully disagree.

Importantly, Tennessee Code Annotated section 24-7-123 has no application to this case. That statute governs the use of a forensic interview as substantive evidence of the defendant's guilt. Where interview statements are not admitted as substantive evidence, as here, the findings required by the statute are simply not required. *State v. Cox*, No. E2020-01388-CCA-R3-CD, 2022 WL 325596, at *14 (Tenn. Crim. App. Feb. 3, 2022), *perm. app. denied* (Tenn. June 8, 2022). Accordingly, the Defendant's concern about compliance with section 24-7-123 is misplaced.

Nor do his concerns about hearsay fare any better. Evidence of statements made by others that are offered to show how a police investigation proceeded is typically not subject to exclusion as hearsay. *See, e.g.*, *State v. Brown*, 915 S.W.2d 3, 6 (Tenn. Crim. App. 1995). Still, this court has cautioned that such evidence can be misused. Testimony recounting the specific statements of an out-of-court declarant, such as an informant or a victim, under the guise of explaining police conduct "could be the subject of great prosecutorial abuse." *State v. Bowen*, No. W2015-01316-CCA-R3-CD, 2016 WL 6776348, at *3 (Tenn. Crim. App. Nov. 15, 2016), *perm. app. denied* (Tenn. Mar. 9, 2017); *State v. Kilburn*, 782 S.W.2d 199, 204 (Tenn. Crim. App. 1989).

In such cases, the concern is not hearsay, but undue prejudice under Tennessee Rule of Evidence 403. *See Bowen*, 2016 WL 6776348, at *3. That rule imposes a "heavy burden" on the party seeking exclusion, and the trial court retains broad discretion in applying it. *See State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002); *State v. Mitchell*, 343 S.W.3d 381, 389 (Tenn. 2011).

The Defendant does not argue on appeal that the investigator's corroborative statements were unduly prejudicial under Rule 403. In any event, we conclude that their admission did not breach a clear and unequivocal rule of law. The investigator's testimony referred only to facts already admitted through the victims' direct testimony. Thus, her statements were cumulative and did not place new or otherwise inadmissible information before the jury. Furthermore, her corroboration of these details was arguably relevant to rebut defense suggestions that the investigation was superficial or flawed.

On this record, the Defendant has not shown the breach of a clear and unequivocal rule of law, as required to satisfy the second factor of plain error review. He also has failed to show that the admission of the investigator's testimony likely affected the outcome of the trial, as required to satisfy the fifth factor necessary for plain error relief. *See State v. Murphy*, No. W2022-01108-CCA-R3-CD, 2024 WL 512549, at *10 (Tenn. Crim. App. Feb. 9, 2024), *perm. app. dismissed* (Tenn. June 20, 2024). Accordingly, the Defendant is not entitled to relief on this ground.

## C.   EXPERT TESTIMONY

The Defendant next argues that the trial court erred by allowing Investigator McDonald to testify about the behavior and characteristics of child sexual abuse victims. He asserts that this testimony amounted to improper expert testimony and that the court should not have permitted it without first qualifying the investigator as an expert witness. He further contends that the trial court had an obligation to intervene sua sponte, even though he did not object at trial or request expert qualification. The State responds that the Defendant has waived this claim by failing to raise a contemporaneous objection and by omitting the issue from his motion for a new trial. We agree with the State.

### 1.   Background

As additional background for the third issue, we note that Investigator McDonald testified to having nearly seventeen years of experience working with child abuse victims. For eight of those years, she served as a child abuse investigator for the State of Tennessee, focusing on sexual abuse and severe child abuse cases. She also served as the supervisor of her investigative unit and was certified as a forensic interviewer.

Relying on this experience, the State asked the investigator what behavioral patterns she had observed in child abuse victims. In response, Investigator McDonald explained that such children often cope by turning to drugs or alcohol and may withdraw from school, family, or social activities. She also noted that victims commonly delay disclosure due to fear of disbelief or previous experiences in which their reports were ignored.

She further testified that child victims frequently struggle to recall specific details—such as dates, locations, or the sequence of events—particularly when describing multiple incidents of abuse. She said that, in her view, these inconsistencies do not necessarily reflect dishonesty but may instead indicate the challenges associated with recounting traumatic experiences.

The Defendant did not object at trial to Investigator McDonald's testimony about the behavioral characteristics of child abuse victims based on her training and experience. Nor did he raise this issue in his motion for a new trial. As such, and consistent with our reasoning in prior sections, we conclude that the Defendant has waived plenary review of this issue on appeal. *Cf. Thompson*, 2023 WL 4552193, at *3 (finding waiver of plenary review where the defendant failed to object to alleged lay opinion testimony and did not include the claim in a motion for a new trial).

## 2.     Plain Error Review

Because the Defendant has waived plenary review of this issue, he may obtain relief, if at all, only under the plain error doctrine.  *See Howard v. State*, 604 S.W.3d 53, 62 (Tenn. 2020).  Importantly, however, appellate courts must exercise plain error review "sparingly." *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

As this court has emphasized in numerous recent decisions, a party seeking plain error relief must "raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *Ruiz*, __ S.W.3d __, 2024 WL 5103509, at *8; *see also State v. Ferguson*, No. E2019-02224-CCA-R3-CD, 2025 WL 1514077, at *40 (Tenn. Crim. App. May 28, 2025) ("The first and best way to obtain plain error review is to ask for it."), *perm. app. open*.  The burden to request plain error review rests with the Defendant; his failure to do so weighs against sua sponte consideration by the court.  *See Ferguson*, 2025 WL 1514077, at *40; *State v. Parker*, 350 S.W.3d 883, 900 (Tenn. 2011).

Unlike his two earlier claims, the Defendant did not acknowledge that he waived this issue or request plain error review in his principal brief.  He also failed to analyze any of the five factors required for such relief.  Only in his reply brief did he suggest that his issue should be reviewed for plain error.  However, "[a] reply brief is a response to the arguments of the appellee; it is not a vehicle for raising new issues." *State v. Banks*, No. W2014-02195-CCA-R3-CD, 2016 WL 369562, at *10 (Tenn. Crim. App. Jan. 29, 2016) (citing *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007)), *no perm. app. filed*. As such, we generally treat issues raised for the first time in a reply brief as having been waived altogether.  *See Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("We also note that petitioner only fully asserts and briefs this claim in his reply brief.  Issues raised for the first time in a reply brief are waived.").

We acknowledge that some panels of this court have exercised discretion to review an issue for plain error despite a belated request.  *See State v. Duncan*, No. M2023-01159-CCA-R3-CD, 2025 WL 1721045, at *10 (Tenn. Crim. App. June 20, 2025), *perm. app. open*.  Depending on the equities of the case, such exceptions may be warranted.  However, absent any unique circumstances, a routine practice of allowing plain error arguments to surface first in a reply brief undermines the appellate process and rewards strategic silence over timely advocacy.  We decline to endorse that approach in this case.

14

Finally, even if we were to agree that plain error review is appropriate—and we do not—the Defendant has not shown that correction of any error is necessary to do substantial justice. To qualify as plain error, the alleged error must be "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). As our supreme court has explained, this standard contemplates a "significant probability that the jury would have acquitted the Defendant had the disputed testimony not been admitted." *Vance*, 596 S.W.3d at 256.

This is not such a case. Investigator McDonald's testimony was brief and received no emphasis during the State's closing argument. Moreover, this is not a case in which the victims' testimony stood alone as the sole evidence of guilt. *See State v. Martinez*, No. W2019-02033-CCA-R3-CD, 2021 WL 2949514, at *14 (Tenn. Crim. App. July 14, 2021) (finding no plain error where expert testimony bolstered the victim's account and other evidence supported the defendant's guilt), *perm. app. denied* (Tenn. Nov. 29, 2021). The victims' mother and father each testified that the victims disclosed the abuse to them. The Defendant's ex-wife also confirmed that he was present at the victims' home on December 13, corroborating the timeline described by both O.B. and Y.B. Additionally, both the victims' father and the Defendant's ex-wife recalled that the abuse was discussed during a family meeting attended by the Defendant, his ex-wife, the victims, and their parents.

Based on the record as a whole, we cannot conclude that the investigator's testimony was "especially egregious in nature" or that its exclusion would have created the significant probability of acquittal necessary to recognize plain error. *See Page*, 184 S.W.3d at 231; *Vance*, 596 S.W.3d at 256. Accordingly, the Defendant is not entitled to relief on this ground.

## D.    LIMITING THE MOTHER'S TESTIMONY

Finally, the Defendant argues that the trial court improperly limited his examination of the victims' mother regarding the circumstances surrounding her divorce. He asserts that the court erred by excluding testimony that O.B. allegedly contacted the mother's attorney in an effort to delay the divorce proceedings. According to the Defendant, this statement qualified as a prior inconsistent statement under Tennessee Rule of Evidence 613 and was admissible to impeach O.B. He further contends that the court's limitation impaired his ability to present a defense.

The State responds that no actual inconsistency was established.  It also argues that the Defendant was otherwise able to challenge O.B.'s credibility through other portions of the mother's testimony.  We agree with the State that the Defendant is not entitled to relief.

### 1.        Background

As additional background for the Defendant's final issue, we note that during cross-examination, O.B. testified that he believed his parents' divorce resulted from the Defendant's abuse.  He denied that his father had abused his mother but conceded that such abuse could have occurred without his knowledge.  O.B. recalled that the divorce process "took a long time" but denied that this delay stemmed from any attempted reconciliation between his parents.  He specifically denied calling his mother's attorney to request that the divorce be dismissed because of a reconciliation.

As part of the defense case, the Defendant called the victims' mother and questioned her about the cause and course of the divorce proceedings.  She testified that the victims' father had been abusive and that she currently had an order of protection against him.  She further stated that the divorce process was not lengthy and that the case was never dismissed.

Defense counsel then asked whether there was a period during the divorce in which the mother had not heard from her attorney.  The State objected, prompting a sidebar.  During the sidebar, defense counsel explained that the proposed testimony was intended to impeach O.B.'s earlier denial of any involvement in trying to dismiss the divorce.  Counsel represented that the mother would testify she overheard the victims' father instructing O.B. to call her attorney and ask that the divorce be dismissed.

The trial court acknowledged that such testimony could be admissible for impeachment but limited the inquiry to whether the mother herself had requested dismissal of the divorce or whether the case had been dismissed without her consent.  The mother testified that she was divorced from the victims' father, that the case was never dismissed, and that she never asked for dismissal.

### 2.        Tennessee Rule of Evidence 613(b)

The Defendant first argues that the trial court erred by excluding testimony from the victims' mother that, in his view, would have impeached O.B. with a prior inconsistent statement.  Specifically, he contends that O.B. denied contacting his mother's divorce

attorney to request a dismissal of the proceedings and that the mother's testimony would have contradicted this claim. We respectfully disagree that the mother's proposed testimony was admissible under Tennessee Rule of Evidence 613.

A witness's testimony may be discredited, or impeached, in several ways. One way is to show that the witness's testimony is inconsistent with something the witness said at another time. *See State v. Bell*, 512 S.W.3d 167, 196 (Tenn. 2015) ("A prior statement by a witness that is inconsistent with his trial testimony is valuable impeachment evidence, and our Rules of Evidence provide for the introduction of prior inconsistent statements for impeachment purposes."). The rationale behind this principle is that "[t]he presence of an inconsistent statement may convince the trier of fact that the witness has lied in one of the two statements or is careless in making statements." *See Tennessee Law of Evidence* § 6.13[2][a].

However, a party's ability to impeach a witness with a prior inconsistent statement is not unlimited. Among other limitations, a party may not impeach a witness with a prior statement unless the prior statement is actually that of the witness, and not of a third party. *See* Tenn. R. Evid. 613 (addressing "[e]xtrinsic evidence of a prior inconsistent statement by a witness"); *State v. Middlebrook*, No. E2019-01503-CCA-R3-CD, 2021 WL 28582, at *15 (Tenn. Crim. App. Jan. 5, 2021) (recognizing that a statement by a third party to impeach the defendant "does not fall within the ambit of Rule 613" because "it is not a statement made by the defendant."), *perm. app. denied* (Tenn. May 12, 2021). For this reason, the mother's testimony on this point was inadmissible under Rule 613.

During a sidebar discussion with the court, the Defendant's lawyer proffered the substance of how he expected the mother to testify before the jury. Counsel noted that O.B. denied interfering in his parents' divorce, and counsel wished to ask the mother about it. The following exchange then occurred:

THE COURT: What is the [mother's] expected response?

[COUNSEL]: She will testify that [O.B.]—that she learned that [O.B.] basically called on her behalf—without permission to cancel this case.

THE COURT: She learned that not from [O.B.]?

17

[COUNSEL]: No, not from [O.B.]. If I continue to explore that[,] she will talk about overhearing [a] conversation between [the father] and [O.B.] knowing about this and directing [O.B.] to do it.

Thus, even assuming that O.B. made a prior "statement"—the record is admittedly not clear what "statement" by O.B. the Defendant actually sought to contradict—the mother's testimony would not have identified a prior inconsistent statement made by O.B. At best, any prior statements would have been made by his father. Because Rule 613 simply does not permit this type of impeachment attack, the trial court acted within its discretion in excluding this evidence to impeach O.B. *See Hunter v. Ura*, 163 S.W.3d 686, 698 (Tenn. 2005) (reviewing Tenn. R. Evid. 613 issues for an abuse of discretion).

Of course, a party may also impeach a witness by simple fact contradiction. "Through fact contradiction, a cross-examining party inquires about facts that conflict with the witness's testimony to show indirectly that the witness is untruthful." *State v. Melton*, No. E2017-00613-CCA-R3-CD, 2018 WL 934650, at *6 (Tenn. Crim. App. Feb. 16, 2018), *perm. app. denied* (Tenn. May 15, 2018). Importantly, however, "fact contradiction as a method of impeachment is generally limited to 'challeng[ing] the accuracy of any *relevant* facts during cross-examination.'" *Middlebrook*, 2021 WL 28582, at *15 (emphasis in original) (quoting *Tennessee Law of Evidence* § 6.07[4][b]).

The Defendant couches his impeachment argument in terms of Tennessee Rule of Evidence 613, and he does not focus more generally on basic fact contradiction. That said, we agree with the trial court that evidence as to whether O.B. and his father discussed interfering with the mother's divorce is so attenuated from the issues of the Defendant's guilt or innocence as to be irrelevant for fact-contradiction purposes. *See id.* ("What Mr. Williams told the police about his location during the offenses did not make any fact of consequence *in the defendant's trial* more or less probable, and, in consequence, it was irrelevant." (emphasis in original)). The Defendant is not entitled to relief on this ground.

### 3. Right to Present a Defense

Alternatively, the Defendant contends that the trial court's limitation on his examination of the victims' mother concerning her divorce interfered with his constitutional right to present a defense. He argues that the mother's testimony was necessary to rebut the State's suggestion that the Defendant caused the divorce and that O.B. supported its continuation. We respectfully disagree.

18

It is well established that the right to present a defense is a "fundamental element of due process of law." *State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000) (citation and internal quotation marks omitted). Nevertheless, this right is not absolute and must be exercised in accordance with the rules of evidence and procedure. *See State v. Flood*, 219 S.W.3d 307, 316 (Tenn. 2007). So long as those rules are not applied "arbitrarily or disproportionately to defeat the purposes they are designed to serve," their application does not infringe on a defendant's constitutional rights. *Id.* When evaluating whether the exclusion of evidence violates due process, courts consider (1) whether the excluded evidence is critical to the defense; (2) whether the evidence bears sufficient indicia of reliability; and (3) whether the interest supporting the exclusion of the evidence is substantially important. *Id.*; *Chambers v. Mississippi*, 410 U.S. 284 (1973).

In this case, we agree with the State that the Defendant has not shown a violation of his right to present a defense. As a threshold matter, evidence cannot be considered "critical" to a defense if it is not relevant to the issues being tried. *See State v. Rogers*, 188 S.W.3d 593, 614 (Tenn. 2006). Here, the proposed testimony from the mother—namely, that she overheard a conversation in which O.B.'s father allegedly directed O.B. to contact her attorney to delay or dismiss the divorce—bears little, if any, relevance to the Defendant's guilt or innocence. Even assuming such a conversation occurred, the mother testified that the divorce process was not lengthy and that the case was never dismissed before the entry of a final decree. Given that testimony, we see no basis to conclude that this line of questioning was either relevant or critical to the defense.

Moreover, even if the testimony bore some modicum of relevance, the Defendant was not impaired in his ability to present this line of evidence. The trial court permitted him to question the mother directly about the causes of the divorce. She testified that she initiated the divorce because the father had been abusive toward her and confirmed that she had obtained an order of protection. The Defendant also cross-examined both the father and O.B. on this subject. The father acknowledged that the mother had accused him of abuse and had been granted an order of protection. While O.B. testified that he had no personal knowledge of abuse, he conceded that such abuse could have occurred outside his presence. This testimony enabled the Defendant to present his theory regarding the causes of the divorce, and it demonstrates that the trial court did not meaningfully restrict his ability to explore this line of defense.

Finally, the Defendant's own handling of the issue at trial underscores that it was not critical to the defense. In closing argument, defense counsel made no reference to the divorce proceedings. He did not highlight any inconsistencies between the testimony of family members on that subject, and he offered no theory suggesting that the divorce bore

19

upon the victims' credibility or the Defendant's guilt. The complete absence of this topic from the Defendant's summation reinforces the conclusion that it was not a critical element of his defense strategy.

For these reasons, we conclude that the trial court's exclusion of testimony concerning an alleged conversation between O.B. and his father about delaying the divorce did not deprive the Defendant of his constitutional right to present a defense. Accordingly, the Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we conclude that the trial court did not commit plain error by exempting certain State witnesses from sequestration or by admitting testimony referencing the victims' forensic interviews. We further conclude that the Defendant waived plenary review of Investigator McDonald's testimony regarding the behavioral characteristics of child sexual abuse victims. Finally, we hold that the trial court acted within its discretion to limit the mother's testimony concerning the circumstances of her divorce. Accordingly, we respectfully affirm the judgments of the trial court.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE